THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TINA GUNALDO** | * | **CIVIL ACTION NO: 2:20-cv-154** |
|     **Plaintiff,** | * | |
| | * | |
| **versus** | * | **JUDGE:** |
| | * | |
| **BOARD OF SUPERVISORS OF** | * | |
| **LOUISIANA STATE UNIVERSITY** | * | |
| **AND AGRICULTURAL AND** | * | **MAG. JUDGE:** |
| **MECHANICAL COLLEGE,** | * | |
| **JOSEPH M. MOERSCHBAECHER,** | * | |
| **LARRY HOLLIER, AND** | * | |
| **ROSALYNN MARTIN** | * | **JURY DEMAND** |
| | * | |
|     **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Tina Gunaldo, who respectfully submits this Complaint and avers the following.

## PARTIES

1. Plaintiff, Tina Gunaldo (hereinafter, "Plaintiff" or "Dr. Gunaldo"), is a person of the full age of majority, domiciled in the Parish of St. Tammany, State of Louisiana.

2. Defendant the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU") is a constitutionally-created body charged with overseeing and managing the "LSU" institutions across the state, with the legal capacity to sue and to be sued.

3. Among the campuses LSU manages is the LSU Health - New Orleans ("LSUHNO"), where LSU's schools of medicine, dentistry, nursing, public health, graduate studies, and allied health professions are located.

4. LSU is an employer with over 500 employees engaged in commerce within the meaning of Title VII, the Equal Pay Act, and Louisiana law.

5. LSU's campuses are "educational institutions" as Title IX defines and uses that term.

6. Along with Louisiana's Constitution and Revised Statutes, LSU's By-Laws govern its relationship with and oversight of the various LSU campuses and their students, faculty, and staff. Pursuant to its By-Laws, LSU delegates its authority to certain administrators on the various campuses including to Defendants Larry H. Hollier, MD; Joseph M. Moerschbaecher, PhD; and Rosalynn Martin, which authority was exercised to engage in the improper and illegal conduct described below.

7. Defendant Larry Hollier (hereinafter, "Defendant Hollier" or "Dr. Hollier") is a person of the full age of majority who is, upon information and belief, domiciled in Orleans Parish, Louisiana.

8. He is Chancellor at the LSUHNO.

9. His job duties and responsibilities include setting salaries for employees within the Office of the Chancellor at LSUHNO.

10. Plaintiff's claims against Defendant Hollier are brought against him in his individual capacity and, for purposes of injunctive relief only, in his official capacity.

11. Defendant Joseph M. Moerschbaecher (hereinafter, "Defendant Moerschbaecher" or "Dr. Moerschbaecher") is a person of the full age of majority who is, upon information and belief, domiciled in Jefferson Parish, Louisiana.

12. Defendant Moerschbaecher is Vice Chancellor of Academic Affairs at LSUHNO, Dean School of Graduate Studies, and a Professor of Pharmacology.

13. His job responsibilities as the Vice Chancellor of Academic Affair include overseeing the operations of three major areas - Academic Affairs, Student Affairs, and Research; and he directly supervises Plaintiff.

14. He is the chief academic officer for the LSUHNO and reports directly to the Chancellor.

15. He also oversees program and curriculum changes; insures LSUHNO's compliance with pertinent Louisiana and federal laws, LSU System Bylaws and Regulations, Chancellor's Memoranda and regional accreditation standards; and publishes the Faculty Handbook.

16. Plaintiff's claims against Defendant Moerschbaecher are brought against him in his individual capacity and, for purposes of injunctive relief only, in his official capacity.

17. Defendant Rosalynn Martin (hereinafter, "Defendant Martin" or "Dr. Martin") is a person of the full age of majority who is, upon information and belief, domiciled in St. Tammany Parish, Louisiana.

18. Defendant Martin the Director of Human Resource Management at LSUHNO.

19. Her job responsibilities include providing quality support, services, and solutions to the LSUHNO staff, faculty, and students.

20. Plaintiff's claims against Defendant Martin are brought against her in her individual capacity and, for purposes of injunctive relief only, in her official capacity.

## JURISDICTION AND VENUE

21. This Court has jurisdiction over this proceeding under 28 U.S.C. § 1331, as Plaintiff's claims arise under the federal law.

22. This Court has jurisdiction over the Louisiana state law claims asserted herein pursuant to 28 U.S.C. § 1367, as said state law claims form part of the same case or controversy under Article III of the United States Constitution.

23. Venue is proper in the Eastern District of Louisiana, as a substantial part of the events or omissions giving rise to the claim occurred in this District or otherwise in accordance with 28 U.S.C. § 1391.

## FACTS

24. In April 2015, Dr. Gunaldo began her role at LSUHNO as Director of the Center for Interprofessional Education and Collaborative Practice (CIPECP). At that time, the salary range of the position was $115,153 to $213,032.

25. However, the position she applied for was 0.50 full-time equivalent (FTE) for the first two fiscal years beginning in 2015, and her annual salary was $60,000.

26. Her position was eventually moved to 1 FTE on December 1, 2016, with a salary of $120,000.00.

27. In the beginning of 2017, Dr. Gunaldo met with Dr. Moerschbaecher, Vice Chancellor of Academic Affairs, concerning generally, annual raises within the institution.

28. She was informed that since there was a state salary freeze, the institution was considering equity raises to get employees to the appropriate salary ranges, and in the 2017 calendar year, some LSUHNO employees, including Dr. Gunaldo, received salary adjustments.

29. Dr. Gunaldo received a 2% raise (to an annual salary of $122,400)

30. Dr. Gunaldo inquired as to why her salary increase was 2%, knowing that salary adjustments varied.

31. Dr. Moerschbaecher informed Dr. Gunaldo he would communicate with Human Resources ("HR") regarding the percentage of salary increase.

32. On or about March 15, 2018, Dr. Moerschbaecher informed Dr. Gunaldo HR made the decision regarding the percentage salary increase.

33. On March 28, 2018, Dr. Gunaldo met with the Director of HR, Rosalynn Martin, and was informed that a market analysis for salary ranges for the institution was conducted.

34. Dr. Gunaldo was provided a list of comparison institutions and a document that the job description for the Director of the CIPECP was compared to an Associate/Assistant Dean of Continuing Education in a School of Medicine.

35. Additionally, at this meeting, Dr. Martin informed Dr. Gunaldo that administrators and each Dean determined the percentage for raises.

36. At that time, Dr. Gunaldo was informed that her salary was lower than what it should be but that the institution only had a finite amount of money to provide salary adjustments. In addition, Dr. Martin indicated it may take several years to get the salary Dr. Gunaldo should receive.

37. On November 26, 2018, Dr. Gunaldo met with Dr. Moerschbaecher to inform him that she did not receive clarity from her meeting with Dr. Martin on March 28, 2018.

38. Along with comparing public records for LSUHNO salaries, Dr. Gunaldo verbally indicated to Dr. Moerschbaecher that she would like to follow the process that was afforded to her to claim gender salary discrimination. She indicated that she would send an email as well as complete the Louisiana Commision on Human Rights ("LCHR") paperwork.

39. Dr. Moerschbaecher is responsible for LSUHNO's compliance with pertinent Louisiana and federal laws, and he knew or should have known that a complaint of gender discrimination such as Plaintiff's required investigation and a response consistent with LSU's Title IX policy.

40. On November 26, 2018, Dr. Gunaldo sent an email to LSUHNO alleging gender discrimination as related to salary. On the same day, she completed an online report with the LCHR.

41. On November 26, 2018, Dr. Martin responded to Dr. Gunaldo's letter and informed her that the Human Resources Employee Relations team would contact her.

42. On December 3, 2018, Dr. Gunaldo met with the Employee Relations Team ("ERT"), which was made up of Terrilyn Cunningham and Jason Johnson, regarding her allegations.

43. She informed the ERT that she received reports from the Louisiana Civil Service Commission and the information in the reports was used to compare salaries and percentage change in salary for comparable individuals.

44. She informed the team that she had a Louisiana Civil Service report of LSUHNO salaries since 2012 and the variation of salary adjustments during 2017.

45. She also informed the team that she would keep them informed of the process she had initiated with the state through the LCHR.

46. During the meeting, she mentioned three topics not related to gender discrimination, but would be beneficial for an individual who may assume the CIPECP position in the future: 1) the current position does not have a dedicated parking spot (other directors within the institution have this benefit option); 2) aspects of the current job description did not include development of curriculum, teaching and grading; 3) the CIPECP position did not hold a faculty position.

47. She addressed these issues because she felt that if administrators wanted her to engage in faculty activities, that this aspect should be included in her job description, and a faculty position may be warranted.

48. At the end of the meeting, the ERT indicated that they would need time to review the allegations and discuss the topics related to the CIPECP job description, faculty position and dedicated parking spot, and that this correspondence would likely be after the holidays.

49. On December 3, 2018, Dr. Gunaldo sent an email to the ERT with written comments related to her current job description.

50. On February 19, 2019, Dr. Gunaldo again met with the ERT, and she was provided a letter, which indicated that her equal pay allegations (first made on November 26, 2018) were not substantiated.

51. When asked what positions were used as comparisons, the team stated they were unable to share that information.

52. Dr. Gunaldo was informed that based upon a review of the Director of CIPECP revised position description, she would receive a 10% salary increase. She asked for the justification for 10% increase; however, she was told that no specifics could be provided.

53. On February 27, 2019, Dr. Martin, Ms. Schexnayder, Compensation Manager, and another representative from HR met with Dr. Gunaldo regarding the calculation of her salary adjustment.

54. Dr. Gunaldo was provided the following information:

   a. Comparative data from other institutions (University of North Texas Health Sciences Center and University of Tennessee);

   b. The salary range for an N37 grade within LSUHNO ($119,736-$204,748);

   c. a suggested revised position description based upon the information gathered from the Employee Relations meetings; and

   d. a position title for future salary comparisons beginning in 2019 (Chief Academic Assessment Officer).

   e. The purpose of the 2017 salary adjustments was to place employees at the minimum of their salary range; however, the institution only had $5 million to distribute and needed $18 million to get employees to that threshold

55. On March 1, 2019, Dr. Gunaldo sent an email to Dr. Moerschbaecher and Dr. Martin suggesting revisions to the job description.

56. Plaintiff filed a charge of discrimiantion with the LCHR on December 28, 2018.

57.Plaintiff received the Right to Sue notice via certified mail on or about October 21, 2019, which is dated October 8, 2019.

58.On or about October 1, 2019, Dr. Gunaldo received a university-wide three percent cost of living adjustment, which increased her annual pay to $138,678.96.

59.To date, Dr. Gunaldo's salary is less than her male counterparts, despite the increases to her salary.

60.Dr. Gunaldo gathered information and documents to analyze salary discrepancies and provided that information to the appropriate persons as addressed herein.  Additionally, she specifically stated to several individuals that based on the evidence gathered and the information received, an equal pay issue existed.

61.The following individuals perform substantially equal work with similar job duties: Patrick Reed, Chris Vidrine, and Jawed Alam.

62.These gentlemen perform work in a position requiring equal skill, effort, and responsibility under similar working conditions to Dr. Gunaldo.

63.Patrick Reed, the Director of Technology Management, works in central administration, as does Dr. Gunaldo.  Mr. Reed also sits at the same level under the Vice Chancellor of Academic Affairs as Dr. Gunaldo. Mr. Reed's salary as of December 31, 2018 was $176,424.00.  Like Dr. Gunaldo, there are no other employees who share Mr. Reed's title.

64.Christopher Vidrine, the former Director of External Relations, worked at the same level as Dr. Gunaldo in central administration.  Both the Director of External Relations and the Director of CIPECP act as liaisons between the institution and outside entities.  Mr.

Vidrine's salary as of December 31, 2018 was $163,718.04. Like Dr. Gunaldo, there are no other employees who share Mr. Vidrine's title.

65. Jawed Alam, the Executive Director of Research Services, works in central administration, as does Dr. Gunaldo. Mr. Alam also sits at the same level under the Vice Chancellor of Academic Affairs as Dr. Gunaldo. Upon information and belief, Mr. Alam's salary as of June of 2019 was $225,000.00. Like Dr. Gunaldo, there are no other employees who share Mr. Alam's title.

**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000E, et. seq.
("TITLE VII")
GENDER DISCRIMINATION**

66. All foregoing allegations are incorporated herein by reference.

67. LSU has intentionally discriminated against Plaintiff on the basis of her gender in violation of Title VII by, among other things, compensating her at rates lower than similarly situated male co-workers.

68. As a direct and proximate cause thereof, Plaintiff has suffered damages and therefore requests she they be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of LSU complained of herein violate Title VII, injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination complained of herein, front pay, compensatory damages, attorney's fees, expenses, costs, and all other and further relief as to this Court appears necessary and proper.

**TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681, et seq.
("TITLE IX")
GENDER DISCRIMINATION**

69. All foregoing allegations are incorporated herein by reference.

70. Each academic and non-academic department and unit for which LSU uses federal funds to pay employee salaries and wages is an "education program and activity receiving federal financial assistance" for purposes of Title IX, 20 U.S.C. §§ 1681, et seq.

71. LSU has discriminated against Plaintiff on the basis of her gender as heretofore alleged.

72. As a direct and proximate cause thereof, Plaintiff has suffered damages and therefore requests that she be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of LSU complained of herein violate Title IX, injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination complained of herein, front pay, compensatory and punitive damages, attorney's fees, expenses, and costs, and all other and further relief as to this Court appears necessary and proper.

### EQUAL PAY ACT, 29 U.S.C. § 201, et seq. ("EPA") GENDER DISCRIMINATION

73. All foregoing allegations are incorporated herein by reference.

74. The EPA prohibits wage discrimination on the basis of sex for equal work on jobs of which require equal skill, effort, and responsibility, and which are performed under similar working conditions. 29 U.S.C. § 206(d).

75. Defendants have discriminated against Plaintiff in violation of the EPA.

76. Defendants paid Plaintiff, or directed that Plaintiff be paid, less than similarly-situated male employees performing equal work on jobs the performance of which require equal skill, effort and responsibility and which are performed under similar working conditions.

77. The differential in pay between Plaintiff and similarly-situated male employees was and is not due to any (i) a seniority system; (ii) a merit system; (iii) a system of earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

78. Defendants did not act in good faith and created and perpetuated gender-based wage discrimination in violation of the EPA.

79. The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).

80. As a result of Defendants' gender-based discriminatory policies and practices, Plaintiff has suffered damages, including but not limited to, lost past and future income, compensation and benefits.

81. By reason of Defendants' discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of the EPA, lost wages, (including interest and benefits), liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, costs, and all other and further relief as to this Court appears necessary and proper.

### 42 U.S.C. § 1983
### § 1983 CLAIMS AS TO DEFENDANTS MOERSCHBAECHER, HOLLIER, AND MARTIN
### GENDER DISCRIMINATION

82. All foregoing allegations are incorporated herein by reference.

83. At all times herein, Defendants Moerschbaecher, Hollier, and Martin, were acting under color of state law, and their actions and omissions caused Plaintiff to be deprived of her rights and privileges in violation of, among other things, the First and Fourteenth Amendments to the U.S. Constitution.

84. Defendants Moerschbaecher, Hollier, and Martin set Plaintiff's salary to her detriment.

85. Dr. Gunaldo's communication with and information given to Defendant Moerschbaecher and Martin put them on notice of gender pay disparities at LSUHNO, including, but not limited to, disparities in Plaintiff's pay.

86. Despite that, Defendants Moerschbaecher and Martin took actions that exacerbated, rather than remedied, those disparities.

87. The actions of Defendant Moerschbaecher and Martin were entirely discretionary and were not taken in reliance upon any policy or procedure established by LSU or LSUHSC-NO.

88. Because Defendant Moerschbaecher and Martin's subjective policy was and is the sole guidepost for setting salaries, other objectionable and illegal employment practices have resulted in pay disparities to the detriment of women employees, including Plaintiff.

89. Defendants Moerschbaecher, Hollier, and Martin condone, endorse, and embrace these objectionable and illegal employment practices within the Office of the Chancellor at LSUHSC-NO and beyond.

90. As a result of Defendants' actions, Plaintiff has been deprived of her rights and privileges of equal treatment and to be free of gender discrimination in violation of the First and Fourteenth Amendments to the U.S. Constitution.

91. A decision favorable to Plaintiff will likely redress the injuries suffered by Plaintiff as a result of Defendants' actions.

92. Plaintiff has suffered damages and therefore requests that she be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of the individual Defendant as set forth herein violate the laws of the United States of America, injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination complained of herein, reinstatement or front pay in lieu thereof, compensatory and punitive damages, attorney's fees, expenses, and costs, and all other and further relief as to this Court appears necessary and proper.

**JURY DEMAND**

93. Plaintiff requests a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, having set forth in her Complaint, Plaintiff requests that she be awarded all available relief under Title VII, Title IX, the EPA, and 42 U.S.C. § 1983, including but not limited to the following:

(a) A declaratory judgment that the acts and practices complained of herein are in violation of the laws of the United States and the state of Louisiana;

(b) A permanent injunction against Defendants from engaging in any further unlawful conduct or practices as set forth herein;

(c) Prospective injunctive relief in the form of, inter alia, increased wages;

(d) Front pay in lieu of reinstatement for Plaintiff;

(e) Lost wages, including back pay, front pay, and lost fringe benefits, which resulted from the unlawful discrimination and retaliation complained of herein;

(f) Liquidated damages under the EPA;

(g) Compensatory damages in an amount to be proved at trial;

(h) Punitive damages against Defendants Moerschbaecher, Hollier, and Martin in their individual capacities commensurate with their ability to pay and to deter future conduct;

(i) Attorney's fees, expenses, and costs, all as provided by law;

(j) Pre-judgment and post-judgment interest; and,

(k) Any other legal and equitable relief that this Court deems just and proper.

Respectfully submitted,

SANGISETTY LAW FIRM, LLC

*/s/ Whitney Wilson*
Ravi K. Sangisetty, BAR NO. 30709
Whitney Wilson, BAR NO. 38447
3914 Canal Street
New Orleans, Louisiana 70119
Telephone: 504-662-1016
Facsimile: 504-662-1318
whitney@sangisettylaw.com
ATTORNEYS FOR PLAINTIFF